**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE ADOPTION OF O.D. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: R.H., LEGAL FATHER | : | |
| | : | No. 1705 MDA 2017 |

Appeal from the Decree Entered October 5, 2017,
in the Court of Common Pleas of Cumberland County
Orphans' Court at No.: 83 Adoptions 2017

BEFORE: BOWES, MURRAY, AND PLATT[*], JJ.

MEMORANDUM BY PLATT, J.: **FILED OCTOBER 01, 2018**

R.H. (Father) appeals from the decree of the Court of Common Pleas of Cumberland County, entered October 5, 2017, that involuntarily terminated his parental rights to O.D. (a male child, born in February of 2/16).[1] We affirm on the basis of the trial court opinion.

We begin by noting that Father is the presumptive and not the natural father of Child. As the trial court observed:

> In this case, [Father] is the presumptive father of [Child] because he was married to [Mother] at the time of [Child's] birth. However, that presumption was rebutted due to [Father's] incarceration at the time of [Child's] conception, and later DNA testing which confirmed that [Father] was not the biological father of [Child].

[*] Retired Senior Judge assigned to Superior Court.

[1] The trial court also involuntarily terminated the parental rights of Child's biological mother, R.D. (Mother), and Child's biological father on August 18, 2017. Neither Mother nor Child's biological father has filed an appeal, nor is either a party to the instant appeal.

Trial Court Opinion, 12/7/17, at 9 (footnote omitted).[2]

Cumberland County Children and Youth Services (CYS) filed its petition to terminate Father's parental rights on August 7, 2017. The trial court held a hearing on that petition on October 4, 2017. At that time, Father was incarcerated in the Taylor Correctional Institute Annex in Florida. His minimum release date was October 2019. Upon his release, Father will be required to register as a sexual offender. N.T. 10/4/17, at 19-20. The trial court appointed an attorney/guardian *ad litem* to represent Child, who was twenty months old at the time of the hearing.[3]

CYS placed Child with his maternal grandmother (MGM) by emergency order on July 1, 2016. (CYS Exhibit 1, Order for Emergency Protective

---

[2] Father also admitted that he is not Child's biological father. N.T. 11/4/17, at 17.

[3] This Court has recently held that we will address *sua sponte* the failure of an orphans' court to appoint counsel pursuant to 23 Pa.C.S.A. § 2313(a). ***See In re K.J.H.***, 180 A.3d 411, 413 (Pa. Super. 2018). Our Supreme Court, in ***In re Adoption of L.B.M.***, 161 A.3d 172 (Pa. 2017) (plurality), held that Section 2313(a) requires that counsel be appointed to represent the legal interests of any child involved in a contested involuntary termination proceeding. The Court defined a child's legal interest as synonymous with his or her preferred outcome. With respect to this Court's holding in ***In re K.M.***, 53 A.3d 781 (Pa. Super. 2012), that a GAL who is an attorney may act as counsel pursuant to Section 2313(a) so long as the dual roles do not create a conflict between the child's best interest and legal interest, the ***L.B.M.*** Court did not overrule it.

In this case, the trial court appointed attorney Marylou Matas to act as Child's attorney and guardian *ad litem*. Our review of the record in this matter leaves us with no doubt that the preferred outcome for the pre-verbal Child is adoption. ***See In re T.S.***, ___ A.3d ___ (2018 WL 4001825) (2018).

Custody, July 6, 2016.) The trial court ratified that placement at a shelter care hearing held on July 5, 2016, after which Child remained with MGM as an informal kinship caregiver. The hearing officer found that Mother had untreated mental health needs and left the shelter where she was staying, leaving Child in the care of his biological father, who was incapable of caring for Child due to alleged cognitive limitations. Mother had a history with CYS due to mental health needs and homelessness. Her two older children previously were adjudicated dependent, and were in the care of MGM as a permanent resource. (CYS Exhibit 1, Master's Recommendation for Shelter Care, July 5, 2016.)

At the time of the hearing on the termination of Father's parental rights, Child had been with MGM for fifteen months. Child has never been in Father's care, and Father has never met nor spoken to him. N.T. 11/4/2017, at 24.

The trial court entered its decree involuntarily terminating Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), (3), (11) and (b) on October 5, 2017. Father filed his notice of appeal and concise statement of errors complained of on appeal on November 3, 2017.

Father raises the following questions on appeal:

> [1] Did the [t]rial [c]ourt err in determining that [CYS] presented evidence so clear, direct, weighty, and convincing as to enable the fact finder to come to a clear conviction without hesitancy, of the truth of the precise facts in issue?

> [2] Did the [t]rial [c]ourt err in determining the best interest of the children would be served by terminating the parental rights of [Father]?
>
> [3] Did the [t]rial [c]ourt err as a matter of law and abuse its discretion in determining the best interests of the children [sic] would be served by terminating the parental rights of Father, when the evidence indicated that the primary reason for the terminating of his rights was his incarceration?

Father's Brief, at 4.[4]

Our standard of review is as follows:

> In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

***In re L.M.***, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Further, we have stated:

> Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.
>
> We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible

[4] We find that Father has waived any challenge to the termination of his parental rights on the grounds of his incarceration by his failure to raise the issue in his concise statement of errors complained of on appeal. ***See Krebs v. United Refining Company of Pennsylvania***, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his or her concise statement of errors complained of on appeal and the statement of questions involved portion of in his or her brief on appeal); Pa.R.A.P. 1925(b)(4)(vii) (stating, "Issues not raised in the Statement and/or not raised in accordance with this paragraph (b)(4) are waived.").

> evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

***In re M.G.***, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

The trial court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), (3), (11), and (b). In order to affirm the termination of parental rights, this Court need only agree with any one subsection of Section 2511(a). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004).

Requests to have a natural parent's parental rights terminated are governed by 23 Pa.C.S.A. § 2511, which provides, in pertinent part:

> **§ 2511. Grounds for involuntary termination**
>
> **(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> * * *
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary

> consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. §§ 2511(a)(2) and (b).

Here, the trial court concluded that termination was appropriate under § 2511(a)(2). The fundamental test in termination of parental rights under Section 2511(a)(2) was long ago stated in the case of ***In re Geiger***, 459 Pa. 636, 331 A.2d 172 (1975). There the Pennsylvania Supreme Court announced under what is now section 2511(a)(2), that the petitioner for involuntary termination must prove "[t]he repeated and continued incapacity, abuse, neglect, or refusal of the parent has caused the child to be without essential parental care, control, or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect, or refusal cannot or will not be remedied by the parent." ***Id.*** at 173.

It is well-settled that a party seeking termination of a parent's rights bears the burden of proving the grounds to so do by "clear and convincing evidence," a standard which requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear

conviction, without hesitance, of the truth of the precise facts in issue." ***In re T.F.***, 847 A.2d 738, 742 (Pa. Super. 2004). Further,

> A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

***In the Interest of K.Z.S.***, 946 A.2d 753, 759 (Pa. Super. 2008) (internal citations omitted).

The Adoption Act provides that a trial court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The Act does not make specific reference to an evaluation of the bond between parent and child but our case law requires the evaluation of any such bond. ***See In re E.M.***, 533 Pa. 115, 620 A.2d 481 (1993). However, this Court has held that the trial court is not required by statute or precedent to order a formal bonding evaluation performed by an expert. ***In re K.K.R.-S***., 958 A.2d 529, 533 (Pa. Super. 2008).

In this appeal, Father argues that he was not given an opportunity to prove to CYS that he could properly parent and care for Child. Father asserts that he testified that his plan was to return to Pennsylvania upon his release, reside with his Mother until he can get a place of his own, obtain employment, and care for his children as a family. Father alleges that CYS

did not present any evidence that he would not be able to accomplish these matters, other than the fact that he is currently incarcerated. Father contends that incarceration alone is not sufficient basis to terminate parental rights. ***See*** Father's Brief, at 7.

As previously noted, Father waived any challenge to the consideration of his incarceration by failing to raise such a challenge in his concise statement. Nevertheless, we find the consideration of Father's incarceration appropriate. In regard to incarcerated parents, our Supreme Court has stated:

> [I]ncarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that [sic] the causes of the incapacity cannot or will not be remedied.

***In re Adoption of S.P.***, 309 Pa. 328-329, 47 A.3d 817, 828 (2012).

* * *

> [W]e now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2). ***See e.g. Adoption of J.J.***, [511 Pa. at 605], 515 A.2d at 891 ("[A] parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties."); ***[In re:] E.A.P.***, [944 A.2d 79, 85 (Pa. Super. 2008)] (holding termination under § 2511(a)(2) supported by mother's repeated incarcerations and failure to be present for

> child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs). If a court finds grounds for termination under subsection (a)(2), a court must determine whether termination is in the best interests of the child, considering the developmental, physical, and emotional needs and welfare of the child pursuant to § 2511(b). In this regard, trial courts must carefully review the individual circumstances for every child to determine, *inter alia*, how a parent's incarceration will factor into an assessment of the child's best interest.

616 Pa. at 332, 47 A.3d at 830-831.[5]

We have examined the record in this case and are satisfied that it contains sufficient competent, credible evidence to support the termination of Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2). We have also examined the trial court opinion in light of the record and are fully satisfied that it is a complete and correct analysis of the issues Father has raised.

Accordingly, we affirm the decree of the Court of Common Pleas of Cumberland County that terminated Father's parental rights pursuant to 23 Pa.C.S.A. §§2511(a)(2) and (b) on the basis of the concise, thorough, and well-written opinion of the Honorable Christylee L. Peck.

Decree affirmed.

---

[5] The Supreme Court cited its decision in ***In re: Adoption of McCray***, 450 Pa. 210, 331 A.2d 652, 655 (1975), for the proposition that termination may

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/01/2018

be appropriate for an incarcerated parent who has failed to perform his parental duties for a six-year period. ***Id.***, at 328, 47 A.3d at 828.

Circulated 10/01/2018 10:56 AM

IN RE: ADOPTION OF O.D., a Minor, D.O.B. 02/[redacted]/16 : IN THE COURT OF COMMON PLEAS OF : CUMBERLAND COUNTY, PENNSYLVANIA : : ORPHAN'S COURT DIVISION : : Trial Court No. 083 ADOPTIONS 2017

Appeal of R.H., Legal Father : Superior Court No. 1705 MDA 2017

LISA M. GRAYSON, ESQ. REGISTER OF WILLS
2017 DEC -7 PM 1:55
CLERK OF ORPHANS' COURT CUMBERLAND CO.

OPINION PURSUANT TO PA.R.A.P. 1925

Peck, J., December 6, 2017 –

On July 14, 2016, O.D. was adjudicated dependent and placed with a kinship caregiver. On March 22, 2017, Cumberland County Children and Youth Services (hereinafter, "CCCYS" or "the Agency"), by and through its solicitor, Lindsay D. Baird, Esquire, filed a Petition to Schedule a Goal Change Hearing.[1] On August 4, 2017, the Agency, by and through Ms. Baird, filed a Petition for Involuntary Termination of Parental Rights of Mother, R[redacted] D[redacted].[2] On August 8, 2017, Petitions for Involuntary Termination of Parental Rights of biological Father, G[redacted] M[redacted], and legal Father, R[redacted] H[redacted], were filed by the Agency.[3] A Goal Change to Adoption/Termination of Parental Rights Hearing was scheduled for August 18, 2017.[4] The Court heard testimony in full on two of the Petitions, and entered Final Decrees terminating the rights of Mother and biological Father on this date.[5] The hearing was continued with regard to Appellant until September 29, 2017 to give him an opportunity

---

[1] Petition for Goal Change Permanency Hearing, March 22, 2017.

[2] Re: Petition for Involuntary Termination of Parental Rights of R[redacted] D[redacted] Under Section 2512 of the Adoption Act, August 4, 2017.

[3] Re: Petition for Involuntary Termination of Parental Rights of G[redacted] M[redacted] Under Section 2512 of the Adoption Act, August 8, 2017; Re: Petition for Involuntary Termination of Parental Rights of R[redacted] H[redacted] Under Section 2512 of the Adoption Act, August 8, 2017.

[4] See In Re: Continuation of Termination of Parental Rights Hearing, Order of Court, August 18, 2017 (Peck, J).

[5] See Re: Petition for Involuntary Termination of Parental Rights of R[redacted] D[redacted] Under Section 2512 of the Adoption Act, Final Decree, August 18, 2017 (Peck, J.); Re: Petition for Involuntary Termination of Parental Rights of G[redacted] M[redacted] Under Section 2512 of the Adoption Act, Final Decree, August 18, 2017 (Peck, J.). Neither Mother nor biological Father has appealed these determinations.

to speak with his appointed counsel.[6] A hearing was held regarding the Petition for the Termination of Parental Rights of Appellant on August 18, 2017 and October 4, 2017. After the hearing and consideration of the evidence, this Court issued a Final Decree terminating the parental rights of Appellant and changing the Child's permanency goal to adoption on October 4, 2017.[7] On November 3, 2017, Appellant filed a Statement of Errors Complained of on Appeal, complaining that:

1. The Honorable Court erred as a matter of law and abused its discretion in terminating Appellant's parental rights in that Appellant, upon his release from incarceration, will be able to provide the child with essential parental care, control, and subsistence.
2. The Honorable Court erred as a matter of law and abused its discretion in terminating Appellant's parental rights in that the conditions which led to the removal or placement of the child no longer existed or were substantially eliminated.
3. The Honorable Court erred as a matter of law and abused its discretion in determining the best interest of the child would be served by terminating Appellant's parental rights.[8]

Pursuant to Pa.R.A.P. 1925(a), this opinion is written in support of this Court's judgment.[9]

## STATEMENT OF FACTS

a. Background

Appellant is the legal father of O.D., born February 3, 2016.[10] O.D. was removed from his Mother's care on July 1, 2016 after the Agency received a referral alleging that then 5-month-old O.D. was left in a homeless shelter in the care of his biological father,

[6] See In Re: Continuation of Termination of Parental Rights Hearing, Order of Court, August 18, 2017 (Peck, J). Due to a conflict in the Court's schedule, the hearing was later rescheduled to October 4, 2017.
[7] Re: Petition for Involuntary Termination of Parental Rights of [redacted] [redacted] Under Section 2512 of the Adoption Act, Final Decree, October 4, 2017 (Peck, J.).
[8] Appellant's Statement of Errors Complained of on Appeal, November 3, 2017.
[9] This Opinion does not include references to the Transcripts from August 18, 2017 and October 4, 2017 as those Notes of Testimony had not yet been prepared by the time this Court submitted its opinion to the Superior Court. See letter to Superior Court dated December 6, 2017 (Peck, J.).
[10] Appellant was married to the child's Mother within one year of his birth, but is not the biological Father of O.D. Appellant is the biological Father of O.D.'s half-sister, T.H., who is not at issue here.

who was unable to care for the child. O.D. was placed in the kinship home of his maternal grandmother, T[redacted] D[redacted], who also has custody of his two half-siblings.[11] On July 14, 2016, after ascertaining that the Child was without proper parental care and control, O.D. was adjudicated dependent.[12] The Child has remained in his maternal grandmother's custody, and at no point during his period of dependency has he been returned to the care of his parents.

The Agency first learned of Appellant in June 2017, approximately eleven months after O.D. had been adjudicated dependent. Appellant has been continuously incarcerated since September 2013, and has been incarcerated out-of-state since February 2015. In June 2015, Appellant was convicted of Unlawful Sexual Activity with Certain Minors[13] and was sentenced to incarceration for a period of five (5) years. Appellant is currently incarcerated in Taylor Correctional Institution Annex in Perry, Florida, and his minimum release date is October 2019.[14] After his release, Appellant will be required to register as a National Sex Offender by the Florida Department of Law Enforcement.[15]

The Agency believes that reunification with Appellant is not an appropriate permanency goal for O.D. under the circumstances, and initiated the process to terminate Appellant's parental rights and allow O.D. to be adopted.[16] T[redacted] D[redacted] filed a Report of Intention to Adopt on August 18, 2017.[17] A Termination of Parental Rights Hearing was held on August 18, 2017 and October 4, 2017. The following pertinent information was presented at the hearing:

---

[11] Mother was previously involved with the Agency due to her homelessness and mental health concerns, and the two older children were adjudicated dependent and placed with maternal grandmother in 2014. The dependency cases as to the two older children were closed in 2015 due to being placed with a fit and willing relative.

[12] CCCYS Exhibit 1, Master's Recommendation for Adjudication and Disposition – Child Dependent, 1, August 18, 2017.

[13] See FLA. STAT. §794.05(1)(2017).

[14] Appellant also represented that his maximum date was August 19, 2020 and that he would likely serve his full sentence.

[15] Re: Petition for Involuntary Termination of Parental Rights of R[redacted] H[redacted] Under Section 2512 of the Adoption Act, ¶14, August 8, 2017.

[16] See Petition for Goal Change Permanency Hearing, March 22, 2017; Re: Petition for Involuntary Termination of Parental Rights of R[redacted] H[redacted] Under Section 2512 of the Adoption Act, ¶14, August 8, 2017.

[17] Report of Intention to Adopt, August 18, 2017.

b. Appellant's Status at Time of Goal Change and Termination Hearing

The CCCYS caseworker, Ms. Ashley Bishop, testified about the goals in the Child's permanency plan. The permanency plan developed for O.D. did not include goals for Appellant, as he was incarcerated and his marriage to the Child's Mother was undisclosed and unreported by the parents.[18] In fact, the Agency did not learn of Appellant until almost one year into O.D.'s placement. Once the Agency identified Appellant, however, it believed that Appellant would not be an appropriate resource for the Child. The caseworker stated that Appellant had not initiated contact with the Agency, despite knowing about O.D. and knowing about the pending dependency action for quite some time. Appellant states that he remains in contact with the Child's caregiver via letters and contact through his mother, but admitted that he last spoke to Ms. Davis in July 2015.[19] Appellant has never met, written, or spoken to the Child.

Appellant has not been gainfully employed since 2013. Appellant believes that it will take him a substantial amount of time to find full-time work and appropriate housing upon his release from incarceration, and testified that he will probably not be ready to parent until 2021. When Appellant was incarcerated in Pennsylvania, he participated in anger management, drug and alcohol, and parenting courses, and underwent counseling; since Appellant has been incarcerated in Florida, he has not taken any classes or gone to counseling.[20] In addition, at the time of the hearing, Appellant was in special confinement due to a verbal altercation with prison staff.[21]

Appellant testified that he is committed to being a father, and that he wants to have custody of his wife's three children since he has been a parent to them in the past and feels himself capable of providing them with a loving, stable home once he is released from incarceration. Specifically, Appellant testified that he plans to return to

[18] CCCYS Exhibit 4, Child's Permanency Plan, August 18, 2017; CCCYS Exhibit 16, Child's Permanency Plan, October 4, 2017.

[19] Appellant's contact with the Child's caregiver concerns his biological daughter, T.H. Appellant stated that he has not sent anything to O.D. because they have never met and he is unsure of how to begin the relationship.

[20] Appellant stated that Florida prisons do not offer any programming for inmates.

[21] Appellant's relegation to "the box" was due to Appellant getting into an argument with a prison commissary official and being written up/disciplined for being disrespectful.

Pennsylvania after he is released so that he can be closer to the children. Appellant's mother reportedly lives in Carlisle, but he does not plan to use his mother as a resource for the children. Appellant testified that although only one of the children is his biological child, he loves them all the same and will be willing and able to take care of all of them.

The Agency's primary concern was that due to Appellant's incarceration, he could not in the foreseeable future provide a safe and stable home for the Child. The Agency also believed that it would be detrimental to O.D. to be taken away from his caregiver and siblings to allow reunification with Appellant, a complete stranger. Appellant has not shown that he has an interest in parenting O.D., as evidenced by his lack of communication with O.D., the Agency, or with the caregiver regarding the child. Appellant also will not be physically able to parent for a significant period of time, as he cannot be released before October 2019. In the Agency's view, O.D. needs stability and permanency, which Appellant cannot provide.

c. <u>O.D.'s Status at the Time of the Hearing</u>

O.D. is a happy, healthy one-and-a-half-year-old child. The Child is not currently receiving any special services for medical issues or otherwise. He currently lives with his maternal grandmother and two half-siblings, four-year-old T.H. and three-year-old C.D.; O.D. has been living in this home since he was five months old, and is well-bonded to his caregiver and siblings. Ms. D[redacted] provides all of the daily care for the Child, takes him to medical appointments and other activities, and provides him with the love and emotional support essential to his everyday well-being. The Agency testified that there have been no issues with Ms. D[redacted]'s ability to parent the Child. Ms. D[redacted] stated that she loves the Child and is willing to adopt him. On the contrary, the Child has never had any contact with Appellant. At the time of the Hearing, O.D. had been dependent for approximately fifteen months. The Agency believes that O.D. is safe in his placement, and is in agreement with Ms. D[redacted]'s intention to adopt the child.

After the hearing and consideration of the evidence, this Court issued a Final Decree terminating the parental rights of Appellant on October 4, 2017. On November 3, 2017, Appellant filed his Statement of Errors Complained of on Appeal.

## DISCUSSION

The Appellant has alleged that:

1. The Honorable Court erred as a matter of law and abused its discretion in terminating Appellant's parental rights in that Appellant, upon his release from incarceration, will be able to provide the child with essential parental care, control, and subsistence.
2. The Honorable Court erred as a matter of law and abused its discretion in terminating Appellant's parental rights in that the conditions which led to the removal or placement of the child no longer existed or were substantially eliminated.
3. The Honorable Court erred as a matter of law and abused its discretion in determining the best interest of the child would be served by terminating Appellant's parental rights.[22]

This Court begins by addressing the standard of review applicable to the Appellant's claims. Pennsylvania appellate courts defer to the trial courts, "adher[ing] to the view that the trial court is in the best position to determine credibility, evaluate the evidence, and make a proper ruling." In re Adoption of Atencio, 650 A.2d 1064, 1066 (Pa. 1994). Absent an abuse of discretion or error of law, where the trial court's findings are supported by competent evidence, an appellate court must affirm the trial court even though the record could support the opposite result. In the Interest of R.J.T., 9 A.3d 1179, 1190 (Pa. 2010). Pennsylvania courts have held that "an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." In re Adoption of S.P., 47 A.3d 817, 826 (Pa. 2012) (internal citations omitted).

[22] Appellant's Statement of Errors Complained of on Appeal, November 3, 2017.

When evaluating a petition for termination of parental rights, the court must conduct a two-part analysis. First, the Court must determine if the Agency has proven that at least one of the statutory grounds of termination set out in 23 Pa.C.S.A. §2511(a) has been met. *See* In re B.L.W., 843 A.3d 380, 384 (Pa. Super. 2004) (*en banc*). Then, the court must evaluate whether the termination is in the best interest of the child, as required by 23 Pa.C.S.A. §2511(b). Id. The burden is on the Petitioner to prove by clear and convincing evidence[23] that the asserted grounds for seeking the termination of parental rights are valid. In re R.N.J., 985 A.2d 273, 276 (Pa. Super. 2009).

While Appellant does not identify statutory bases for his Errors Complained of on Appeal, Appellant's Errors essentially argue the Agency has failed to meet the statutory grounds for termination under 23 Pa.C.S.A. §2511(a) and §2511(b). Appellant's first and second Errors Complained of on Appeal relate primarily to the grounds of termination in 23 Pa.C.S.A. §2511(a), and Appellant's third argument relates primarily to the best interest of the child standard laid out in 23 Pa.C.S.A. §2511(b). Noting overlap in the factual analysis required under each section, this Court will nonetheless address Appellant's arguments in two parts.

a. Sufficiency of Evidence of Statutory Ground under 23 Pa.C.S.A. §2511(a)

The fulfillment of any one subsection of § 2511(a) satisfies a threshold sufficient for the court to proceed to evaluate the best interest of the child under 23 Pa.C.S.A. §2511(b). In re B.L.W., 843 A.3d 380, 384 (Pa. Super. 2004) (*en banc*). The Agency's Petition alleged that the statutory grounds for termination were met under 23 Pa.C.S.A. §2511(a)(2), (a)(3), and (a)(11).[24] On appeal, Appellant does not specify which statutory sections provide support for his arguments; Appellant's first and second claims are that this Court erred because he is able to provide the Child with essential parental care,

---

[23] "Before terminating a parent's rights, the trial court must receive testimony 'that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" In re Adoption of A.C., 162 A.3d 1123, 1133 (Pa. Super. 2017) (quoting *In re Adoption of Atencio*, 650 A.2d 1064, 1066 (Pa. 1994)).

[24] Re: Petition for Involuntary Termination of Parental Rights of R[redacted] H[redacted] under Section 2512 of the Adoption Act, August 8, 2017.

control, and subsistence, and that the conditions which led to the removal or placement of the child no longer exist or have been eliminated. With these arguments, Appellant seems to contend the Agency has not met the standard for termination under 23 Pa.C.S.A. §2511(a)(2). That section allows for termination of parental rights under the following conditions:

> The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. §2511(a)(2).

This Court also notes that the Agency alleged grounds for termination under 23 Pa.C.S.A. §2511(a)(3) and 23 Pa.C.S.A. §2511(a)(11). These sections allow for termination of parental rights under the following conditions:

> The parent is the presumptive but not the natural father of the child.

23 Pa.C.S.A. §2511(a)(3).

> The parent is required to register as a sexual offender under 42 Pa.C.S. Ch. 97 Subch. H (relating to registration of sexual offenders)[25] or to register with a sexual offender registry in another jurisdiction or foreign country.

23 Pa.C.S.A. §2511(a)(11).

Because no objection to this Court's findings under either §2511(a)(3) or (a)(11) was raised by the Appellant on appeal, any argument that the Appellant has in opposition to grounds for termination under these sections are waived.

---

[25] See 42 Pa.C.S.A. §9799.10 et seq.

In this case, Appellant is the presumptive father of O.D. because he was married to the Child's Mother at the time of O.D.'s birth.[26] However, that presumption was rebutted due to Appellant's incarceration at the time of O.D.'s conception and later DNA testing which confirmed that Appellant was not the biological father of the child.

In addition, the record reflects and Appellant testified that upon his release from incarceration, he will be required to register as a sex offender.

Although incarceration of a parent alone is not sufficient grounds for termination,[27] "incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under §2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied." In re Adoption of S.P., 47 A.3d 817, 828 (Pa. 2012). A parent's incarceration can be determinative, based on the duration and the incapacitating effect of incarceration on the parent, of whether the parent is able to provide "essential parental care, control, or subsistence" and whether the incapacity can be remedied by the parent. In re Adoption of A.C., 162 A.3d 1123, 1132 (Pa. Super. 2017) (internal citations omitted).

In this case, O.D. was removed from his Mother's care in July 2016 due to concerns that Mother's transiency and untreated mental health condition was creating an unsafe environment for him. Notably, Appellant knew that O.D. had been placed in Ms. Davis's care and that there was an ongoing dependency action for O.D.; however, Appellant did not choose to contact the Agency to assert his parental rights until O.D. had already been in care for almost one year and the Agency was beginning the process of terminating the parental rights of Mother and biological Father. In addition, since O.D. has been placed with maternal grandmother, Appellant has been continuously

[26] See Barnard v. Anderson, 767 A.2d 592, 594 (Pa. Super. 2001) ("a child born to a married woman is the child of the woman's husband...[t]raditionally, the presumption can be rebutted only by proof either that the husband was physically incapable of fathering a child or that he did not have access to his wife during the period of conception.") (internal citations omitted).

[27] In re Z.P., 994 A.2d 1108, 1120 (Pa. Super. 2010) ("incarceration neither compels nor precludes termination").

incarcerated and will continue to be incarcerated for at least another two years. Appellant is unable to provide appropriate care and control of the Child now or in the near future.

Appellant has not made any efforts to build a relationship with the Child during his period of incarceration. Appellant himself testified that he has never spoken to, met, or sent anything (cards, letters, gifts, etc.) to the Child. Ms. D[redacted], the Child's caregiver, stated that O.D. does not know who Appellant is and there would be absolutely no negative impact on O.D. if Appellant's rights were terminated. Furthermore, Appellant's natural daughter, T.H., also resides with the Child in her maternal grandmother's home. Appellant does not enjoy any custodial rights over T.H., as she too was involved in a dependency action in 2014 and 2015. Appellant has not proven himself able to exercise care or control over either T.H. or O.D. at any time in the past or presently.

Viewing the record as a whole, this Court agrees with the Agency's assessment that Appellant has not proven himself capable, thus far, of providing appropriate care and control over the Child. Furthermore, Appellant's conviction and incarceration for sexual activity with a minor is concerning regarding his ability to provide appropriate parental supervision. While Appellant testified that he wishes to be a father to O.D., the facts remain that Appellant is incarcerated for the foreseeable future, that he has not proven himself capable of parenting, and that he has not demonstrated a desire to create and maintain a relationship with the Child. This Court found the Agency has shown that the continued incapacity and refusal of Appellant has caused O.D. to be without essential parental care, control, and subsistence, and that such circumstances cannot be remedied by Appellant within a reasonable time necessary for the Child's well-being.

With the requirements of at least one subsection of 23 Pa.C.S.A. §§2511(a)(2), (a)(3), and (a)(11) fulfilled, this Court found the Agency had proven by clear and convincing evidence that a ground for termination under 23 Pa.C.S.A. §2511(a) was met. This Court now turns to analysis under 23 Pa.C.S.A. §2511(b), which looks to the best interests of the child.

b. <u>Sufficiency of Evidence that Termination of Parental Rights was in the Child's Best Interest</u>

This Court next examines Appellant's third claim, that the court abused its discretion or committed an error of law in finding that terminating Appellant's rights was in the child's best interest. Appellant has not alleged any facts to support his claim that the Court abused its discretion, and this Court is therefore unable to address it with specificity. The record contains no evidence that this court demonstrated manifest unreasonableness, partiality, prejudice or ill-will.

Appellant likewise has not alleged any facts to support his claim that this Court erred as a matter of law on this issue. Having found the Agency proved a statutory ground for termination under 23 Pa.C.S.A. §2511(a), this Court turned to consider the best interest of the child under 23 Pa.C.S.A. §2511(b). In re B.L.W., 843 A.3d 380, 384 (Pa. Super. 2004) (*en banc*). The standard requires the court "to give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. §2511(b). Furthermore, "the rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent." Id. However, the courts have stated that the emotional needs and welfare of the child have properly been interpreted to include "intangibles such as love, comfort, security, and stability." In re K.M., 53 A.3d 781, 791 (Pa. Super. 2012). When making a Section 2511(b) determination, the courts are to focus on the child, not the parent. In Re Adoption of C.L.G., 956 A.2d 999, 1008 (Pa. Super 2008) (*en banc*).

This Court finds competent evidence in the record that it is in O.D.'s best interests to terminate Appellant's parental rights and allow for him to be adopted by his current caregiver. Multiple parties testified as to O.D.'s need for stability. O.D. has been placed with a caregiver other than his parents for fifteen months. O.D. is placed with a family member who is open to remaining in contact with the child's biological parents and extended families if appropriate. O.D. also resides with his siblings. Appellant has never taken care of O.D.'s daily needs, and in fact, has never met or talked to the Child. O.D.'s caregiver testified that O.D. is doing well in the home and that she is willing to be a permanent resource for him.

O.D. does not have any relationship whatsoever with Appellant, but he does have a significant bond with his caretaker and his siblings who also live in the home. Furthermore, Appellant himself testified that he believes that O.D. is safe in his current placement and that he trusts Ms. D[redacted] to appropriately raise the Child. O.D.'s guardian *ad litem* and the Agency recommended termination so that Ms. D[redacted] may adopt the Child.

In sum, the record contains testimony from multiple parties that O.D.'s interests would be best served by staying in his current placement and being adopted by Ms. D[redacted]. Though Appellant wishes to be a father, he has not thus far proven himself capable or willing to be the father that O.D. needs. At this point, O.D. needs stability and to move forward. Ms. D[redacted] has proven herself capable of providing that stability, in addition to the love and security O.D. needs. This Court agrees with the Agency's position that it is in the best interest of the Child to terminate parental rights and allow for adoption. The Agency has proven, by clear and convincing evidence, it is in the best interests of the child to allow for a termination of parental rights under 23 Pa.C.S.A. §2511(b).

## CONCLUSION

This Court finds the issues raised by Appellant on appeal are without merit. For the reasons articulated in the above opinion, this Court respectfully requests the Superior Court of Pennsylvania to affirm this Court's order granting the Agency's Petition for Involuntary Termination of Rights of Appellant, R[redacted] H[redacted].

BY THE COURT,

Christylee L. Peck, J.